**BLACK, SIVALLS & BRYSON et al. v. NEWELL et al.**

No. 22442. Opinion Filed Oct. 27, 1931.

Keaton, Wells, Johnston & Barnes and B. C. Davidson, for petitioners.

Babb & Bennett, for respondents.

CLARK, V. C. J. This is an original action filed in this court by petitioners to review an award of the State Industrial Commission made and entered on the 11th day of May, 1931, wherein Dave Newell, respondent, was given an award for temporary total disability at $18 per week, the average wage of claimant below, respondent herein, at the time of the injury being $5 per day, from the 5th day of July, 1930, the date of the injury, less the statutory five-day waiting period, to May 5, 1931; and to continue compensation thereafter until otherwise ordered by the Commission, on account of personal injury received by being struck in the lower left side of the back by a bolt box falling from off the top of a tank; and the further finding that as a further result of the injury, claimant below, respondent herein, sustained a hernia on the left side, and ordered that an operation should be tendered for the correction of the hernia.

Petitioners submit their contentions under two propositions as follows:

"(1) That the proof in said cause fails to show that the hernia directly or proximately resulted from the falling of the box.

"(2) That the evidence fails to sustain the award and it shows that an operation for hernia was tendered claimant on August 7, 1930. "

The respondent, claimant below, testified that on the 5th day of July, 1930, the date of the injury, he was in the employ of petitioner herein, engaged in tank building in the oil field, and on said date was engaged in painting the tank, that he was at the bottom of the tank and other workmen were up there finishing up, and that he was standing stooped over tightening the rope on the ladder, and a bolt box weighing about 10 to 20 pounds fell off of a three rink tank, about 26 feet high, and struck him in the left side of the back—just over the heart—ribs, flesh, and short ribs. That he fell to the ground—strained his left arm and it knocked his whole left side numb and

made him sick at his stomach. That he was first taken to St. Anthony's Hospital at Oklahoma City, where he was bound up in about ten minutes and advised to go back in two days to Dr. Turlington at Seminole, and he reported back to Dr. Turlington at Seminole and remained there for about 30 days, treated and examined by Dr. Turlington, and then went to Williams, Okla., with his brother-in-law. That he had not worked since the injury, that he had not been able to work, that the doctor gives him pain tablets all of the time, and that he is not able to work—hardly exist. That he had never been troubled with hernia before the injury; that he suffered from the hernia at this time.

Dr. R. W. Miner testified, in substance: That he had known the respondent for about 18 years and had been his family physician for about 15 years, and further testified:

"Q. Have you had occasion to make an examination of him the last few days or weeks? A. Yes, sir. Q. Is he suffering from injury at this time? A. Yes. Q. Is it hernia? A. Yes. Q. Have you been treating him for this trouble? A. Yes, sir. Q. I believe he has—he received some injury, did he not? A. Yes. Q. Do you recall about when you first treated him for this hernia, doctor? A. Well, he came back to Williams about August 10th. Q. I believe you said Doctor, that Mr. Newell is suffering from other disability than this hernia? A. Yes, sir. Q. During your professional services rendered Mr. Newell, was he afflicted this way prior to the date of the injury? A. He was not. Q. In Mr. Newell's present condition, is he able to do manual labor? A. No. Q. How do you attribute a hernia in the inguinal region could be caused from a side blow? A. From pressure on this part with a foreign object. Q. He was leaning over in a stooped position? A. Yes. It might be the same if he was in an erect position. This pressure on the duodenum down and through the hernia ring, with pressure."

Dr. Turlington testified, in subtsance: That about the 7th day of July, he rendered respondent medical service. That his back was strapped with adhesive tape. When that was removed he found some bruise and abrasions and the external surface was all raw and that he complained of pain and soreness along in the left lower quardrant of the abdomen and rigidity of the muscles there. That two or three days later he found a hernia on the left side. That he developed architis, which was not present at the first examination, but that the left testicle became sore and swollen and painful with a lump or small verococele. That he treated him for several days, but there was nothing he could do without it was an operation for the hernia. That he recommended an operation. That the insurance company did not authorize him to perform the operation. That the architis could have been due to an obstructed circulation, at least, due to the injury. The obstruction was due to the injury. Dr. Turlington further testified:

"Q. Due to the hernia condition? A. Due to a strain. I could not tell you exactly what did happen in there. I don't know. It was an internal injury, and I don't know just what did happen, but it was my opinion that it was due to the injury."

Dr. S. R. Cunningham testified in behalf of the respondent, and insurance carrier below, petitioners herein, that he saw the respondent herein in the examining room at St. Anthony's Hospital in July, 1930. That claimant came in with the history of having been struck on the back and placing his hand up as far as one could place their hand backward on the back and said he was struck there; that he examined him and found no evidence of injury, other than he said he was injured. That there was no open wound, or anything, and they let him go and that he never saw him again. Witness later amended his statement and testified that his card says:

"There was an abrasion of the skin—or skinned place on the muscle of the back and it was a specific and abraised wound."

Dr. Schuler testified for the respondents below, petitioners herein, that he examined respondent herein at St. Anthony's Hospital about July 5th last. That he had an abrasion right in the middle of the back about the level of the twelfth dorsal vertebra. That he examined claimant on the date of the hearing, May 5, 1931, and that he now has a hernia on the left side.

The testimony discloses that the claimant was not examined for hernia in the St. Anthony's Hospital.

The evidence, in so far as the tender of an operation to respondent herein, is as follows: De Selms, employee in the claim department of petitioner, testified that he had a conversation with the respondent about the 6th or 7th of August and the respondent explained to him about having a hernia in the left inguinal region and when questioned as to whether he tendered Mr. Newell an operation for hernia, he answered:

"A. I did, I took a statement from him. the facts about this accident. I think a statement of the facts from him and Dr. Turlington suggested he had hernia and he

agreed to be in Oklahoma City to be operated on by Dr. Von Wedel the next week."

The witness on examination by the court testified as follows:

"Q. I believe you testified that you made arrangements for the claimant to be operated on in Oklahoma City? A. Well, Judge, I said it was this way, I made arrangements for the claimant to come to Oklahoma City. Q. Just what arrangements did you make? A. He was to come to Oklahoma City the next week. Q. Did you pay him any compensation at that time? A. I am not sure whether I did or not at that time. My file will show. Q. Did you give him any expense money to come to Oklahoma City on? A. He didn't ask for any—Q. I didn't ask you that. Did you offer him the necessary money to present himself to your doctor in Oklahoma City for an operation? A. No; I did not—nor money to go to Seminole."

The respondent herein testified, with reference to the tender of an operation, that he spent some 30 days at Seminole after the accident trying to secure an operation and that Dr. Turlington wrote to the petitioner numerous letters for 30 days regarding the operation. That they first O. K.'d the operation and then canceled the same.

He denied that he had ever been tendered an operation, denied that the witness De Selms offered to give him an operation, but that the said De Selms only told him, "That when they got everything fixed up, and the reports and everything straightened out he might get an operation."

"Q. Did he ever tell you to come to Oklahoma City and be ready for an operation? A. No."

There was filed before the Industrial Commission tender of operation for hernia, which is dated May 20, 1931, to be performed on the 29th day of May, at St. Anthony's Hospital in Oklahoma City or at the Baptist Hospital in the city of Muskogee on the 29th day of May, 1931, and also tender for reasonable expenses and cost of travel. In the brief of petitioners, on page 40, petitioners state:

"Supplemental reports and records show that this last tender was accepted and the claimant was operated upon about May 29, 1931, which operation was satisfactory."

The evidence is conflicting as to whether or not respondent is disabled otherwise than from the hernia, and the evidence is conflicting as to whether or not the injury caused the hernia.

This court will not weigh the evidence to determine the weight and value thereof;

that is for the Industrial Commission; and the award being based upon findings of fact by the Industrial Commission, and there being competent evidence reasonably tending to support the same, the judgment and award of the Industrial Commission is affirmed.

LESTER, C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CULLISON, J., absent.